## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Marc Amouri Bakambia, | Case No. 24-CV-04623 (JRT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Paul P. Schnell, Minnesota Commissioner of Corrections, in his official capacity, | |
| Defendant. | |

Plaintiff Marc Amouri Bakambia is a prisoner at the Minnesota Correctional Facility in Stillwater, Minnesota ("MCF-Stillwater"). (Dkt. 1 (Complaint).) He challenges the facility's new mail policy and asserts that mailroom staff have impermissibly interfered with his mail in violation of his constitutional rights. (*Id.*) Bakambia has paid the initial partial filing fee of $94.20 as previously ordered. (*See* Dkt. 5.) He has also submitted two letters to the Court adding factual matter to his claims. (*See* Dkts. 6, 7.) The Complaint—read together with these letters—is thus now before the Court for preservice review pursuant to 28 U.S.C. § 1915A(a). Upon that review, this Court recommends that the Complaint (Dkt. 1) be dismissed without prejudice for failure to state a claim, 28 U.S.C. § 1915A(b)(1), and that his application to proceed *in forma pauperis*, ("IFP") (Dkt. 2) be denied as moot.

## BACKGROUND

As part of its increased drug interdiction efforts, the Minnesota Department of Corrections ("DOC") has changed the mail policies and procedures at its prisons. *See* (Dkt. 1 ¶ 9.) The definition of legal mail now excludes mail to and from the court, court staff, and government officials. (*Id.* at 1-2.) Instead, this mail is considered "Special Mail." (*Id.* ¶ 48.) Inmates sending "Special Mail" have been directed not to seal the envelope prior to mailing. (*Id.* ¶ 50.) The policy has also been modified to require legal mail to be opened and copied in the presence of the inmate. (*Id.* at 4.) The inmate is given an opportunity to review the copies for accuracy and then the originals are placed in the "shred it" box. (*Id.* ¶ 9.) The DOC also now contracts with TexBehind to process and scan "regular mail," although there appears to be some confusion, with respect to legal mail, about when the TexBehind address is to be used as a return address and when it remains appropriate to use the facility address as the return address on outgoing mail. (*Id.* ¶¶ 41-44.)

Bakambia asserts two general claims for relief. First, he claims that this new policy is the DOC's latest effort to interfere with inmates' mail in violation of their constitutional rights. (*Id.* ¶¶ 4-9.) Bakambia claims that the policy itself is unconstitutional because mail to and from the court, court staff, and government officials is no longer treated as "legal mail," and the "shred it" box is a box marked "confidential," which is accessible to staff. (*Id.* ¶¶ 9-10.)

Second, Bakambia describes three instances where MCF-Stillwater mailroom staff have impermissibly interfered with his mail. First, he says mailroom staff did not send

out his mail as directed, returning it to him for permission to mail it "priority mail" because his mail was over 13 oz. (*Id.* ¶¶ 28-29.) Next, in his first letter to the Court, Bakambia asserts that this Court's Order calculating his initial partial filing fee was initially incorrectly delivered to the wrong inmate. (*Id.* at 1.) Then, in his second letter to the Court, Bakambia describes an incident where he deposited mail in the mailroom for delivery and was initially told it was sent out on January 24, 2025, but later learned that the certified mail tracking number showed that the item had not been submitted to the post office as of January 26, 2025. (Dkt. 7.) Bakambia requests injunctive and declarative relief.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915A—a part of the Prison Litigation Reform Act (PLRA)—the Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a "pro se complaint must be liberally construed," *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014), pro se plaintiffs must allege sufficient facts to

3

"nudge[] their claims across the line from conceivable to plausible [or] their complaint must be dismissed," *Twombly*, 550 U.S. at 569-70.

## LEGAL ANALYSIS

Bakambia brings this action pursuant to 42 U.S.C. § 1983. (Dkt. 1.) To establish a plausible § 1983 claim, "a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law." *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006). "Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)).

Here, Bakambia names Paul Schnell as a defendant in his official capacity only. (Dkt. 1.) "A suit against a government official in his or her official capacity is another way of pleading an action against an entity of which an officer is an agent." *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)). Accordingly, Bakambia's claims against Schnell are claims against the State of Minnesota. As noted above, Bakambia asserts two claims: (1) the new DOC mail policy is unconstitutional and (2) MCF-Stillwater mailroom staff have impermissibly interfered with his mail in violation of his constitutional rights.

"It is settled law that convicted persons 'do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994). "Inmates clearly retain protections afforded by the First Amendment." *Id.* (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).

4

"This includes the right to send and receive mail." *Id.* (citations omitted). And "to be free from certain interference with mail correspondence." *Davis v. Norris*, 249 F.3d 800, 801 (8th Cir. 2001) (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)). But it is equally well established that "prison officials have a duty to maintain security within the prison, and this may include reading inmates' incoming and outgoing mail, with the exception of legal mail." *Thongvanh*, 17 F.3d at 258-59. Thus, courts consider claims involving inmate mail—both incoming and outgoing—against the standard set forth in *Turner*. *Id*. at 259 (citing *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993)). That standard turns on the question of whether the regulation is reasonably related to a legitimate penological interest. *Id.*

**A.    DOC Mail Policy**

Bakambia primarily takes issue with two aspects of the new DOC mail policy: (1) the recharacterization of mail to and from the court, court staff, and government officials as "special mail," as opposed to "legal mail;" and (2) the handling of original copies of "legal mail" after the copies are provided to the inmate.

First, the Eighth Circuit has long recognized a distinction between "privileged" and "non-privileged" mail. A policy of opening and scanning non-privileged prisoner mail for contraband outside the presence of the inmate does not raise constitutional concerns. *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (citing *Harrod v. Halford*, 773 F.2d 234, 235-36 (8th Cir. 1985)). But privileged mail, that is, "mail to or from an inmate's attorney and identified as such," *Wolff v. McDonnell*, 418 U.S. 539, 574 (1974), may not be opened for inspection outside the inmate's presence, *see Gardner*,

109 F.3d at 431. "The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that **confidential attorney-client mail** has not been improperly read in the guise of searching for contraband." *Id*. (emphasis added) (citations omitted). It is also important to note that "the mere fact that a letter comes from a legal source is insufficient to indicate that it is confidential and requires special treatment." *Harrod*, 773 F.2d at 236.

Accordingly, the previous iteration of the DOC's mail policy—purportedly requiring that mail from the courts, court staff, and government officials be opened in the presence of inmates—did **more** than the Constitution requires. And the current policy, which no longer requires this mail to be opened in the presence of inmates, nevertheless meets the minimum constitutional standards set forth in *Wolff*, given that these communications are not from legal counsel.[1]

The second question, then, is whether the change in DOC policy with respect to privileged legal mail violates the Constitution. This policy requires mail identified under

---

[1] Bakambia takes issue with the fact that all DOC communications—including the information published on its external website—do not accurately reflect current DOC mail policies. (Dkt. 1 at 2.) He also asserts that there is some question about when (and whether) the DOC mail policy requires the TexBehind address to be listed as the return address. But Bakambia fails to identify how these unresolved issues implicate the Constitution. To the extent that Bakambia claims that the DOC has failed to be consistent in its implementation of its new mail policies, a failure to follow prison policy, by itself, does not establish a plausible § 1983 claim. *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) (prisoners do not have a constitutional right to a particular state procedure); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy."). And, as noted above, neither policy—the DOC's previous treatment of "legal mail" nor its current handling of "legal mail"—offends the Constitution.

6

the newly narrowed definition of "legal mail" to be copied in the presence of the inmate and then placed in the "shred it" box after the inmate has reviewed the copy for accuracy. (Ex. 1 at 1, Dkt. 1-1.) For his part, Bakambia claims that this policy violates the Constitution because corrections staff have access to the "shred it" box and there are no systems in place to ensure that the privileged legal mail placed in the "shred it" box is, indeed, shredded. (Dkt. 1 ¶¶ 9-10.) The fundamental problem with this contention is that Bakambia claims that staff **could** access and read privileged legal mail, he does not claim that it **has** happened or even that staff have threatened to access and read privileged legal mail.

      The jurisdiction of federal courts extends only to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. To satisfy the case or controversy requirement, a plaintiff must establish standing as an "indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Relevant here, to establish standing, the plaintiff must have suffered an injury in fact. *Id.* at 560-61. An injury in fact "must be concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The purpose of this requirement "is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* Thus, "allegations of *possible* future injury are not sufficient." *Id.* (internal citation omitted).

      Here, Bakambia's claim rests on his concern that DOC staff will—at some future point in time—access the confidential "shred it" box, remove inmates' legal mail, and intentionally read it rather than dispose of it. Such a claim relies on speculative chain of

possibilities that may (or may not) occur and is simply insufficient to establish standing. *See Clapper*, 568 U.S. at 414 (holding that plaintiffs lacked standing to sue because a "speculative chain of possibilities" could not establish an injury in fact).[2] Accordingly, in sum, Bakambia has failed to allege that these two modifications to the DOC's mail policy—limiting the definition of "legal mail" and modifying the handling of "legal mail"—establishes a plausible constitutional violation.

**B.     Interference with Mails**

This leaves Bakambia's claim that MCF-Stillwater mailroom staff has interfered with his mail in violation of his constitutional rights.

Here, again, Bakambia has failed to assert a plausible constitutional violation. "[R]elatively isolated or short-term disruption in the delivery or receipt of an inmate's mail does not rise to the level of a constitutional deprivation." *Blake v. Stepp*, Case No. 3:20-cv-00178, 2020 WL 2950411, at * 2 (S.D. W.Va. Apr. 30, 2020) (collecting cases), *R. & R. adopted by* 2020 WL 2945556 (S.D. W.Va. June 3, 2020); *see also Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (plaintiff failed to establish First Amendment

---

[2]     To be sure, Bakambia claims that a different inmate, S.A., received notification that he received "legal mail," specifically a copy of a federal court order that was left on his cell.  He was not required to sign for it.  When he inquired about this mail, he was told that he had already received it and was provided another copy, suggesting that mailroom staff had retained a copy of the original.  (*See* Dkt. 1 ¶¶ 56-63at 12-13; Ex. 7 at 41-44, Dkt. 1-1.).  But a federal court order does not constitute "legal mail," notwithstanding the label used by MCF-Stillwater staff to describe it.  *See Hari v. Smith*, Case No. 20-cv-1455 (ECT/TNL), 2022 WL 1122940, at *25 (D. Minn. Jan. 31, 2022) (mail from the courts is not "protected legal mail"), *R. & R. adopted by* 2022 WL 612100 (D. Minn. Mar. 2. 2022).  As stated above, moreover, opening and scanning unprotected legal related mail outside the inmate's presence does not offend the Constitution.

8

claim based on delays in mail delivery where those delays were sporadic and there were no allegations that the delays stemmed from some content-based prison policy or practice). Further, in addressing the inadvertent opening of legal mail, which the law affords heightened protections, the Eighth Circuit has concluded that "an isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access to the courts, does not give rise to a constitutional violation." *Gardner*, 109 F.3d at 431 (cleaned up).

In this case, Bakambia describes two instances where delivery of his outgoing non-legal mail was purportedly delayed—once because it was "overweight" and mailroom staff requested his permission to send it "priority" before mailing it, and a second time when his mail was available but not picked up for delivery until days later—and an instance where his non-legal mail—this Court's order—was initially delivered to the wrong inmate. But these three instances fall well short of establishing a pattern of intentional delay. *See Laughlin v. Stuart*, Case No. 22-1742, 2022 WL 12165755, at *1 (8th Cir. Oct. 21, 2022) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (isolated incident of mail tampering is usually insufficient to establish constitutional violation; rather, inmate must show that prison officials regularly and unjustifiably interfered with legal mail)). Further, Bakambia does not assert that he was prejudiced by these delays such that the delay impeded his ability to prosecute or defend some pending case. *See White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) ("To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or

conditions of confinement in a court of law, which resulted in **actual injury**, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.") (emphasis added). Bakambia, therefore, has failed to establish that the purported interference with his mail amounts to a constitutional violation. Bakambia's requests for declarative and injunctive relief should therefore be denied.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff Marc Amouri Bakambia's Complaint (Dkt. 1) be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1).

2. Plaintiff's application to proceed *in forma pauperis* (Dkt. 2) be **DENIED** as moot.

3. Plaintiff be required to pay the unpaid balance of this action's statutory filing fee—$255.80—in the manner prescribed by 28 U.S.C. § 1915(b)(2), and the Clerk of Court should be required to provide notice of this requirement to the authorities at the institution where he is confined.

Dated: February 12, 2025            *s/Elizabeth Cowan Wright*
                                    ELIZABETH COWAN WRIGHT
                                    United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).